Harold A. BISHOP; John L. and Susan Marie Brugman; Frank Chao; James A. Del Vecchio; William F. Eger; Ronald K. Epperson; Gary E. Farmar; Russell D. Gleason; Doris Lougee; William R. Marsh; Mark M. Mortenson; Marvin S. Murphy; Frances M. Reed; Richard R. Schaefer; Lori K. Schultz, John A. Shrope; and Todd L. Vriesman, Petitioners–Appellants,

v.

COLORADO STATE BOARD OF ASSESSMENT APPEALS and Jefferson County Board of Commissioners, Respondents–Appellees.

No. 93CA1903.

Colorado Court of Appeals, Div. I.

Nov. 17, 1994.

Rehearing Denied Jan. 12, 1995.

Certiorari Denied July 24, 1995.

Kirkland & Ellis, Todd L. Vriesman, Daniel K. Frey, Denver, for petitioners-appellants.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for respondent-appellee Colo. Bd. of Assessment Appeals.

Frank J. Hutfless, Jefferson County Atty., Stanley Monroe, Carolyn D.C. Justice, Golden, for respondent-appellee Jefferson County Bd. of Com'rs.

Opinion by Judge KAPELKE.

This appeal arises from a protest of 1991 and 1992 property tax valuations of residential property in Jefferson County owned by petitioners (taxpayers). Respondent Colorado State Board of Assessment Appeals (BAA) upheld the decision of the Jefferson County Board of Commissioners (BOC) affirming the valuations of the county assessor, and taxpayers pursued this appeal. We affirm.

Taxpayers are seventeen homeowners in a subdivision in Jefferson County. Some of the lots in that subdivision, including those lots owned by taxpayers, have unobstructed views of downtown Denver while others do not.

In tax years 1991 and 1992, the county assessor, using a market approach, increased the assessed value of each of taxpayers' lots from $29,500 to $50,000 to reflect the enhanced value attributable to the view. The valuation of several other lots in the subdivision with views, however, was not increased and remained at $29,500, the assessed value of the non-view lots in the subdivision.

Taxpayers filed petitions with the BOC for an abatement or refund for 1991 and 1992. They did not claim that the valuation placed on their lots was incorrect; rather, they claimed that the assessed value of their lots should be reduced by $20,500 (the view adjustment) to equalize the valuation of their lots with that of the other view lots in the subdivision.

Following an evidentiary hearing at which the county assessor testified that taxpayers' lots were correctly assessed and that the view lots whose value had not been subject to the view adjustment were undervalued, the BOC denied taxpayers' request for an abatement or refund. Taxpayers thereafter appealed the BOC's decision to the BAA.

At the hearing before the BAA, taxpayers did not contend that the assessor's valuation of their lots was inaccurate. Rather, they again argued that, because the county assessor had mistakenly undervalued other view lots in their subdivision, the assessed value of their lots should be reduced to equal that of the undervalued lots.

The BAA concluded that the assessor's valuation of taxpayers' lots was correct and did not have to be reduced to equal the assessed valuation of the erroneously assessed lots.

I.

Taxpayers first contend that the BAA abused its discretion in refusing to adjust the assessed value of their lots to equal that of

the undervalued view lots in their subdivision. We disagree.

On review, we may not set aside the BAA's determination unless it is arbitrary and capricious or unsupported by any competent evidence. *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27 (Colo.1990); *Denver v. Board of Assessment Appeals,* 802 P.2d 1109 (Colo.App.1990); §§ 24–4–106(7) & 24–4–106(11)(e), C.R.S. (1988 Repl.Vol. 10A).

■ Colo. Const. art. X, § 3(1)(a) requires that:

The actual value of all real ... property ... shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments.... Valuations ... shall be based on appraisals by assessing officers to determine the actual value of property in accordance with provisions of law, which laws shall provide that actual value be determined by appropriate consideration of cost approach, market approach, and income approach to appraisal....

The purpose of this provision is to ensure uniform application of the methodology used in valuing property for tax assessment purposes. *See also* § 39–1–103(5)(a), C.R.S. (1994 Repl.Vol 16B). Thus, "while equalization of the basis for taxation is the end sought to be achieved by uniform laws and by uniform means and methods of assessment, perfect uniformity in actual assessment is not required either under the constitution or the statute." *Crocog Co. v. Arapahoe County Board of Equalization,* 813 P.2d 768, 770 (Colo.App.1990).

In *Crocog Co. v. Arapahoe County Board of Equalization, supra,* the taxpayer sought review of a decision in which the BAA had refused to reduce the assessed value of his vacant land to conform to that of neighboring land. The taxpayer conceded that the assessment of his land fairly and accurately reflected its actual market value and that the neighboring land had been undervalued.

On review, a division of this court upheld the BAA's ruling and specifically rejected the contention that, to comply with the constitu-tion's equalization provision, the assessed value of property that has been correctly assessed must be reduced to equal the value of erroneously undervalued property. In so doing it stated:

Insofar as the ... assessment of [taxpayer's] property is conceded to be a proper reflection of its actual value as determined by application of state statutes and regulations, no adjustment is required. Indeed, a countywide adjustment to conform all similarly situated property in [the county] to one erroneous assessment in that county would undermine the very principles of statewide equalization upon which [taxpayer] relies.

*Crocog Co. v. Arapahoe County Board of Equalization, supra,* 813 P.2d at 771.

Here, as in *Crocog,* taxpayers did not allege that the assessed value of their lots did not properly reflect actual market value, or that the other view lots had been correctly assessed. Accordingly, we conclude that the BAA did not abuse its discretion in refusing to reduce the assessed value of their lots to conform to that of the erroneously assessed lots. *See Crocog Co. v. Arapahoe County Board of Equalization, supra.*

Contrary to taxpayers' contention, *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1922) does not require a different result. In that case, the United States Supreme Court held that a taxpayer whose property was correctly assessed at its full value was entitled to have the assessment reduced because the state assessor had intentionally and systematically assessed other similar properties at less than their full value.

In *Sioux City Bridge Co.,* the Court specifically noted that "mere errors of judgment" by the assessor would not warrant such a reduction in the assessed value of correctly assessed property. Rather, "there must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity" to justify reducing the valuation of correctly assessed property to equal that of erroneously undervalued property. *Sioux City Bridge*

*Co. v. Dakota County,* 260 U.S. at 447, 43 S.Ct. at 192, 67 L.Ed. at 343.

Here, taxpayers presented no evidence that the assessor engaged in such an intentional violation. Accordingly, a reduction in the assessed value of their lots to conform to that of the erroneously assessed view lots in their subdivision is not warranted.

We need not, and do not, address the question of whether, if such an intentional violation had been shown, the BAA would be the appropriate tribunal to grant relief.

## II.

■ Taxpayers next contend that the BAA's refusal to consider certain evidence constituted an abuse of discretion warranting reversal of its decision. We disagree.

At the hearing before the BAA, taxpayer attempted to introduce evidence to show that in the 1993 tax year the assessor had failed to correct the erroneous valuations placed on the other view lots.

Based on our review of the evidence presented at the hearing, as well as taxpayers' excluded evidence, we conclude that any error in not admitting the proffered evidence was harmless. The evidence would not have affected the BAA's determination that taxpayers were not entitled to the requested reduction in the assessed value of their lots, and, therefore, the exclusion of that evidence did not prejudice taxpayers or affect their substantial rights. *See Poudre Valley Rural Electric Ass'n v. City of Loveland,* 807 P.2d 547 (Colo.1991).

We reject taxpayers' contention that the proffered evidence would have led the BAA to reach a different result. Contrary to taxpayers' assertion, the court in *Crocog Co. v. Arapahoe County Board of Equalization, supra,* did not base its decision on the assessor's correction of the erroneous valuation in the following tax year. The assessor's correction of the erroneous assessment was but one of several factors the court considered in reaching its decision in that case and was not determinative of the outcome.

Accordingly, the order of the BAA is affirmed.

METZGER and CRISWELL, JJ., concur.